IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS RYBURN, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Case No. 07-CV-0011-MJR-CJP |
| DARRELL WESTERMAN and DAVID TINDELL, | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Currently pending before the Court in this case is the joint motion of Defendants Darrell Westerman and David Tindell for summary judgment (Doc. 66). Defendants served the notice (Doc. 67) required by *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982), and the motion is supported by exhibits consisting of portions of plaintiff's deposition and defendants' affidavits. Ryburn also filed memoranda and exhibits in opposition. (Docs. 73, 88, 94.)

As Ryburn's interlocutory appeal was recently dismissed by the Seventh Circuit (Doc. 101), this matter is now ripe for determination.

### Ryburn's Allegations

Ryburn is an inmate in the custody of the IDOC. He sued under 42 U.S.C. § 1983 alleging that defendants retaliated against him for his exercise of his First Amendment rights.

As set forth in the amended complaint and exhibits attached thereto (Doc. 5), Ryburn alleges a series of events beginning in February, 2003. At that time, Ryburn was assigned to Menard Correctional Center. As will be seen later, many of the events recited by Ryburn have nothing at all to do with either defendant.

In February, 2003, another inmate told Westerman that Ryburn possessed a weapon which he intended to use to stab Westerman. Internal Affairs launched an investigation. A search of Ryburn's cell revealed the presence of a fan with a broken blade. A disciplinary report was written, charging him with "damage or misuse of property." It does not appear that either defendant was involved in the investigation or the issuance of the charge. After serving his time in segregation on the disciplinary ticket, Ryburn was subjected to a "retaliatory transfer" to Stateville Correctional Center. While there, he filed a number of grievances and filed a "mandamus" action asserting that he was disabled and should be transferred to an "ADA facility." The Illinois Attorney General filed a motion to dismiss the mandamus action, and, within days, Ryburn was again subjected to a "retaliatory transfer" back to Menard. Upon his arrival at Menard on June 9, 2004, the medical staff confiscated his cane and extra pillow. A few days later, his outgoing legal mail was held up and some cassette tapes were confiscated.

On June 24, 2004, Ryburn was being escorted to the law library at Menard. He was carrying an envelope which contained legal materials. He was stopped by defendant Westerman on Front Street. Westerman wrote a disciplinary report for violation of a rule which prohibited inmates from carrying envelopes. Ryburn claims that Westerman also "took/destroyed" his legal materials.

On August 3, 2004, the June 24, 2004, disciplinary report was expunged based on Ryburn's evidence that he had not been informed of the issuance of the new rule prohibiting inmates from carrying envelopes. On that same day, Ryburn had a conversation with defendant Tindell in which Ryburn told Tindell that another inmate lied to Internal Affairs back in 2003 about Ryburn and Westerman. (This is evidentially a reference to the inmate who provided the information leading to the fan blade disciplinary report.) According to Ryburn, he stated to Tindell that the inmate was a "snitch-bitch" who had lied to Internal Affairs. Another correctional officer named Howell allegedly witnessed this conversation. Tindell then "misinformed" Westerman about what had been said,

2

telling Westerman that Ryburn had called Westerman a lying snitch-bitch. Westerman told Tindell to write a disciplinary report. Ryburn claims that he then explained to Tindell that Tindell had misunderstood him and that Tindell reported this to Westerman, but Westerman ordered Tindell to write the report anyway.

On June 23, 2005, Ryburn filed a grievance against Westerman for slander, defamation and putting his life in danger. This followed an incident in which Westerman allegedly called Ryburn a child molester. Although the grievance was stamped "received" by the grievance officer, the grievance officer later denied having received it.

On August 16, 2006, Westerman allegedly conspired with the law librarian to have Ryburn brought to the law library when he had not requested a library visit. On his way back from the commissary, Westerman "confronted" him about a lawsuit, and continues to "harass" Ryburn whenever he leaves the cellhouse.

## Standard for Summary Judgment

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 563 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(c)); *accord, Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. Cir. 2008); *Levy v. Minn. Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008).

In ruling on a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party (here, Ryburn). *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009); *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).

In response to summary judgment, the non-movant cannot rest on his pleadings. Rather, the non-movant must provide evidence on which the jury or court could find in *his* favor. *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). As the Seventh Circuit recently explained:

> [T]he non-moving party must submit evidence that there is a genuine issue for trial. The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party.

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 531-32(7th Cir. 2009) (citation omitted) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006)).

Stated another way, to counter a summary judgment motion, the nonmoving party may not simply reiterate the allegations contained in his pleadings; more substantial evidence must be presented. And a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

**Analysis**

Defendants argue that they are entitled to summary judgment because Ryburn cannot prove that he engaged in a protected activity which was the motive for defendants' actions.

Prison officials may not retaliate against inmates for exercising their First Amendment rights. To establish a First Amendment retaliation claim a plaintiff must demonstrate that the plaintiff "engaged in activity protected by the First Amendment" and that the plaintiff "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The plaintiff must also establish that the protected activity caused the

4

defendant to retaliate. *See Gunville v. Walker*, 583 F.3d 979, 984 n.1 (7th Cir. 2009) ("Until the Supreme Court's recent decision in *Gross v. FBL Financial Serv[ices], Inc.*, plaintiffs could prevail in a First Amendment § 1983 action if they could demonstrate that their speech was a motivating factor in the defendant's decision. After *Gross*, plaintiffs in federal suits must demonstrate but-for causation unless a statute (such as the Civil Rights Act of 1991) provides otherwise." (citation omitted) (citing *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009); *Fairley v. Andrews*, 578 F.3d 518, 525–26 (7th Cir. 2009))). At the summary judgment stage, the plaintiff must come forward with some evidence of causation; "mere speculation" is not sufficient. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 757 (7th Cir. 2008).

Once a plaintiff makes the showing required by *Bridges*, the burden shifts to the defendants to show that they would have undertaken the alleged retaliatory acts regardless of the bad motive. *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009).

To begin with, by Ryburn's own admission, many of the events alleged in the amended complaint have nothing to do with either defendant. Thus, Ryburn does not claim that either defendant was responsible for the confiscation of his cane or of his cassette tapes, for his transfer to Stateville in 2003, or his transfer back to Menard in 2004. (Doc. 73 at 1.) Ryburn testified in his deposition (Doc. 66, Ex. A) that the only claim against Tindell is the fact that Tindell wrote the disciplinary report of August 3, 2004. (Ryburn Dep. 40.) He further testified that he has no evidence that Westerman was involved in delaying his mail. (*Id.* at 39-40.) With regard to the claim that Westerman was involved in calling him out to the law library on August 16, 2006, Ryburn's only "evidence" is his statement that Westerman and the librarian are "good friends." (Doc. 73 ¶ 30.)

Shorn of the excess verbiage and irrelevant allegations, Ryburn's claim is that defendant Westerman retaliated against him by taking the following actions:

>   1. Westerman wrote Ryburn a ticket (the "envelope ticket") on June 24, 2004, for carrying an envelope in violation of a recently-promulgated rule.
>
>   2. Westerman confiscated Ryburn's envelope on June 24, 2004, which contained legal materials. Westerman refused to give him a shake-down slip and destroyed his legal materials.
>
>   3. Westerman told defendant Tindell to issue a ticket to Ryburn on August 3, 2004.
>
>   4. On June 23, 2005, Westerman called Ryburn a child molester. The grievance officer denied receiving Ryburn's grievance about this incident.

Ryburn's claim against Tindell is that Tindell retaliated against him by writing a ticket on August 3, 2004 (the "insolence ticket"), even though Tindell knew that Ryburn's reference to a "snitch-bitch" was directed to another inmate and not to Westerman.

Defendants first argue that Ryburn has not identified any exercise of his First Amendment rights as the reason for the alleged retaliation. In fact, Ryburn's deposition testimony suggests that he perceives that Westerman harbors long-standing personal animosity towards him. Ryburn testified in his deposition that "Westerman and I have been going at this since I got to Menard in 1999." (Ryburn Dep. 11.) When asked what it is that Westerman is retaliating for, Ryburn replied, "I think it's something personal with him, and I really don't know what his reasons for his cowardly acts are." (*Id.*)

Ryburn then traced the alleged retaliation back to the 2003 incident in which Ryburn was investigated for threatening to stab Westerman with a knife that Ryburn had hidden in his cell. (Ryburn Dep. 11–12.) Another inmate informed prison authorities that Ryburn said he had a knife and was going to use it on Westerman. Internal Affairs conducted the investigation. No knife was found, but Ryburn was found to be in possession of a fan that was missing a blade.

6

Westerman's affidavit (Doc. 66, Ex. B) confirms that, in 2003, another inmate told him that Ryburn had a knife and said he was going to use it on Westerman. Westerman informed Internal Affairs, which then conducted an investigation.

Obviously, planning or threatening to stab a prison guard is not an activity which is protected by the First Amendment.

Ryburn was charged with damage and misuse of property based on possession of the broken fan. He successfully grieved that ticket. The ticket was expunged because the charge of damage and misuse of property does not apply to an inmate's own property. (Ryburn Dep. 12.) While the filing of the grievance was certainly a protected activity, there is no evidence at all that Westerman or Tindell were motivated to act against Ryburn because he filed that grievance. In fact, there is no evidence at all that Westerman or Tindell even knew about the grievance.

The record indicates that Ryburn is a prolific filer of grievances and lawsuits. Those activities are protected by the First Amendment. However, the record is completely devoid of any evidence that Westerman or Tindell took any action against him because of his filing of grievances or lawsuits. In fact, the record is devoid of any evidence that either defendant even knew about his grievances and lawsuits, many of which were filed while he was at Stateville, and not Menard.

Both defendants have filed affidavits in which they deny any retaliation and state that they issued the disciplinary tickets in question to Ryburn because of Ryburn's violation of prison rules, and not for any retaliatory purpose. (Tindell Affid., Doc. 66, Ex. B; Westerman Affid.) That the tickets were later expunged does not constitute that they were issued for improper purposes. At the summary judgment stage, plaintiff must come forward with some *evidence* of causation; "mere speculation" is not sufficient, *Rockwell Automation,* 544 F.3d at 757, and "mere temporal proximity" is not evidence of causation. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 851 (7th Cir.2008).

7

Without any evidence regarding causation, Ryburn cannot maintain his case against defendants. They are entitled to judgment as a matter of law.

### Conclusion

Ryburn has not produced any evidence to demonstrate that there is a material fact as to whether either defendant took action against him because of his exercise of his First Amendment rights. He has also failed to identify any protected activity which motivated defendants to take action against him. Both defendants are entitled to summary judgment; accordingly, Defendants' Motion for Summary Judgment (Doc. 66) is **GRANTED**.

The Clerk of Court is directed to close the case and to enter judgment that plaintiff Ryburn take nothing in his suit against defendants Darrell Westerman and David Tindell.

**IT IS SO ORDERED.**

**DATED March 11, 2010.**

                                                **s/ Michael J. Reagan**
                                                **MICHAEL J. REAGAN**
                                                **United States District Judge**